IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA HARDWICK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER GUARDIAN SPECIALISTS, LLC, D/B/A CREDIT SHIELD, AND SARAH YOUNG,<br><br>Defendants. | )<br>)<br>)<br>)<br>)    2:20-cv-00060<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Consumer Guardian Specialists, LLC, d/b/a Credit Shield ("Consumer Guardian") and Defendant Sarah Young's ("Young") joint Motion to Dismiss (ECF No. 43) Plaintiff Linda Hardwick's ("Hardwick") Amended Complaint (ECF No. 34), in which Hardwick alleges that Defendants violated several provisions of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*.

Defendants seek to dismiss all claims against Consumer Guardian and Young under Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3), (b)(4), (b)(5), and (b)(6). As to Defendant Young, the Court concludes that it does not have personal jurisdiction over this Defendant, and accordingly GRANTS the Motion to Dismiss to the extent it seeks to dismiss Hardwick's claims against Young under Rule 12(b)(2).[1] As to Defendant Consumer Guardian, the Court concludes that on the record as

---

[1] Because the Court dismisses the claims against Young pursuant Federal Rule of Civil Procedure 12(b)(2), the Court need not consider the other grounds for dismissal as to Young raised in the Motion to Dismiss. (ECF No. 43.) As for Consumer Guardian, the Court will hold in abeyance the resolution of the Motion to Dismiss pending the completion of limited jurisdictional discovery.

1

now exists, it would grant Consumer Guardian's Motion. However, the record at present also leads the Court to conclude that there are factual allegations "that suggest 'with reasonable particularity' the possible existence of . . . requisite 'contacts between [Consumer Guardian] and the forum state," and so the Court will permit limited jurisdictional discovery to determine Consumer Guardian's contacts with the forum. *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir. 2003). Pending the completion of that limited discovery, the Court will hold in abeyance the grant of the Motion to Dismiss as to Consumer Guardian. In the meantime, the Court will stay and administratively close this case pending completion of the limited jurisdictional discovery authorized by the Court.

**I.     BACKGROUND**

The Court draws the relevant facts from Hardwick's Amended Complaint. (ECF No. 34.) Hardwick is a Pittsburgh resident who used Consumer Guardian's credit repair services. (*Id*. at 3.) Defendant Consumer Guardian, doing business as "Credit Shield," is a registered limited liability company ("LLC") allegedly domiciled in Florida. (*Id*. at 3.) Consumer Guardian is a "credit repair organization" in the business of assisting consumers to improve their credit records, credit history, and credit ratings. (*Id*.) Young is the "managing principal, operator[,] and controller" of Consumer Guardian, and she resides in Lutz, Florida. (*Id*. at 4.)

In September 2018, Hardwick contracted with Consumer Guardian, through which Consumer Guardian would allegedly dispute "credit card or other debts with third party collection agencies" to improve Hardwick's credit score (a service that Hardwick alleges Consumer Guardian advertises on its website). (*Id*. at 4.) In sum, Hardwick contends that Defendants (1) illegally charged her for credit repair services that they failed to fully perform, an amount Hardwick alleges to total $3,431.67, all in violation 15 U.S.C. § 1697b and (2) "failed to provide the required written

disclosures" in violation of § 1692a.[2] (*Id*. at 5–9 (referring to the disclosures listed in §§ 1679c and 1679d).) Hardwick contends that because Defendants violated CROA disclosure requirements, the contract between Hardwick and Consumer Guardian "is void and unenforceable" under § 1697f. For these alleged CROA violations, Hardwick seeks to have this Court certify this case as a class action and requests that the Court order Defendants to "pay actual, consequential, statutory, and/or punitive damages . . . including restitution and disgorgement of all profits and unjust enrichment." (*Id*. at 23.) Hardwick also requests a declaration that the contracts entered are void and unenforceable, and seeks the payment of attorney's fees, litigation costs, and "pre- and post-judgment interest on any amounts awarded." (*Id*. at 24.)

Defendants jointly moved to dismiss this action against both Consumer Guardian and Young under Federal Rules of Civil Procedure 12(b)(1) through 12(b)(6). (ECF No. 43.) Hardwick filed an Opposition (ECF Nos. 46 and 47), to which Defendants replied (ECF No. 48). For the Court's consideration, both parties submitted several exhibits (ECF Nos. 34-1–34-8; 43-2; 43-3; 47-1; and 48-1), which the Court may properly consider on a Rule 12(b)(2) jurisdictional challenge. *See Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). The matter is now ripe for disposition.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss an action for lack of personal jurisdiction. Once a challenge to personal jurisdiction has been raised, the plaintiff bears the burden of establishing "jurisdictional facts through sworn affidavits or other competent

---

[2] Hardwick somewhat generically alleges that "Defendant Credit Shield and Defendant Sarah Young are jointly and severally liable as a result of the participation theory, agency relationship, and/or their conspiracy to engage in an intentional tort in violation of federal law." (ECF No. 34, at 23.)

3

evidence." *Patterson*, 893 F.2d at 604 (citation omitted). The plaintiff must show "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citations omitted). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a *prima facie* case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2007); *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."). Here, the Court analyzes whether the record supports the existence of a prima facie case of specific personal jurisdiction over either or both Defendants, as Hardwick does not argue that general personal jurisdiction is the basis for jurisdiction in this case.³ (*See* ECF No. 47, at 10–13.)

### III.     DISCUSSION

Two main issues are before the Court: (1) whether Defendants' contacts, as alleged in the Amended Complaint and in the record before the Court, show that Defendants directed their activities at the forum, such that they purposefully availed themselves of the privilege of conducting activities within Pennsylvania; and (2) whether the Court should permit limited jurisdictional discovery as to either Defendant. The Court concludes that Hardwick's allegations

---

³ Although Hardwick does not contend that the Court may exercise general personal jurisdiction over either Defendant, Defendants' joint Motion to Dismiss argues that the Court has neither general personal jurisdiction nor specific personal jurisdiction over Defendants. The Court agrees with Defendants in that the contacts as alleged in Hardwick's Amended Complaint fall short in facially establishing that either Defendant "carried on a continuous and systematic part of its general business within the Commonwealth of Pennsylvania sufficient to confer *in personam* jurisdiction over it[.]" *Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 438 (3d Cir. 1987). For many of the same reasons that the Court explains that it does not have specific personal jurisdiction over either Defendant, the Court also concludes that it does not have general personal jurisdiction over Consumer Guardian or Young.

against Young do not facially show sufficient contacts with Pennsylvania such that the Court may exercise personal jurisdiction over Young, and that jurisdictional discovery about Young's contacts is not warranted. As to Consumer Guardian, Hardwick has raised allegations sufficient for this Court to permit jurisdictional discovery as to Consumer Guardian's jurisdictional contacts with Pennsylvania, and thus the Court will hold in abeyance its resolution of Consumer Guardian's Motion to Dismiss.

### A. General and Specific Personal Jurisdiction

Federal courts may "exercise personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Looking to Pennsylvania's long-arm statute, a federal court sitting in Pennsylvania may exercise jurisdiction "based on minimum contacts with th[e] Commonwealth allowed under the Constitution of the United States." *Id.* (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino*, 960 F.2d at 1221 and *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir. 1994)). A court may exercise either general jurisdiction or specific jurisdiction. *O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Marten v. Goodwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Hall*, 466 U.S. at 408, 414–15 & n.8). Hardwick does not argue that general jurisdiction applies here, and the Court focuses its inquiry on whether it has specific jurisdiction over either Defendant. (*See* ECF No. 47.)

5

To determine whether specific jurisdiction exists, courts apply a three-part inquiry: First, whether the defendant has "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, whether the present litigation arises out of or relates to at least one of those activities. *Id*. (citing *Hall*, 466 U.S. at 414–15 & n.9). Third, assuming the first two requirements are satisfied, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id*. (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 476).

At issue is the first prong: whether Consumer Guardian and Young directed their activities at Pennsylvania such that they purposefully availed themselves of the privilege of conducting activities within the forum—an analysis that is otherwise known as minimum contacts analysis. *Id.* As this Court recently observed in *LCV Capital Management, LLC v. Nuova Argo Finanziaria S.p.A. et al.*, "the Supreme Court's guidance in *Walden v. Fiore* is controlling of its analysis here." No. 18-01645, 2021 WL 716728, at *5 (W.D. Pa. Feb. 24, 2021) (citing *Walden v. Fiore*, 571 U.S. 277 (2014)).[4] To "exercise [specific] jurisdiction consistent with due process, the defendant's suit-

---

[4] During the pendency of this action, the Supreme Court issued its decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, Nos. 19-368, 19-369, slip op. at 1 (U.S. Mar. 25, 2021). In *Ford*, the personal jurisdiction issue before the Supreme Court focused on the second prong of the specific jurisdiction analysis: whether a plaintiff's alleged injury arises out of the defendant's minimum contacts with the forum. Specifically, in *Ford*, the Court analyzed whether the automobile company's expansive sales, advertising, service, and related activities in Montana and Minnesota—which Ford conceded satisfied the "purposeful availment" prong of the specific jurisdiction analysis—were sufficiently connected to the injuries caused in each state by Ford's product. *Id.* at 7, 9. The Court held that "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's court may entertain the resulting suit." *Id*. at 1–2.

Unlike the defendant in *Ford*, neither Consumer Guardian nor Young concede that they have minimum contacts with Pennsylvania sufficient to show that they purposefully availed themselves of the privileges of conducting business in Pennsylvania. Rather, they oppose that assertion. (ECF No. 48, at 10.) The issue before the Supreme Court and its ultimate holding in *Ford* does not change this Court's analysis of specific personal jurisdiction on the record as it now exists. In the Court's estimation, at issue in this case is whether the first prong of specific jurisdiction is satisfied: whether Defendants purposefully availed themselves of the privileges of conducting business in Pennsylvania. Because the Court concludes that the record at present does not show that either

related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Whether a court may exercise specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)," which narrows a court's focus under this first prong to the relationship among the forum state, the defendant, and the case at issue. *See Walden*, 571 U.S. at 283 n.6 (alteration in original) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

As a result, the Court must assess whether Young or Consumer Guardian's "suit-related conduct" creates "a substantial connection" with Pennsylvania to establish the necessary minimum contacts. *Id.* at 284. The minimum contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). "[T]he plaintiff cannot be the only link between the defendant and the forum [as] it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [the defendant]." *Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478). Finally, the "defendant's relationship with a plaintiff [or a third party] . . . is an insufficient basis for jurisdiction[.]" *Id*. at 286. (citing *Rush v. Savchuck*, 444 U.S. 320, 332 (1980)).

### B. Jurisdictional Discovery

In her Opposition to Defendants' to Motion to Dismiss, Hardwick "requests jurisdictional discovery to establish all of Defendants' contacts with the forum related to Plaintiffs' claims."

---

Defendant has sufficient minimum contacts with Pennsylvania such that they purposefully availed themselves of the forum's laws and privileges, the Court is not faced with the same issue that was before the Supreme Court in *Ford*: whether the alleged contacts are sufficiently related to the plaintiffs' suit for the Court to exercise personal jurisdiction. *See Ford*, slip op. at 9.

(ECF No. 47, at 12.) "[If t]he plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden . . . . Furthermore, we have found jurisdictional discovery particularly appropriate where the defendant is a corporation." *Metcalf v. Renaissance Marine Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (internal citation omitted) (alterations in original) (*citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir. 1983)). Thus, "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc.*, 318 F.3d at 456 (internal quotation marks omitted) (quoting *Farino*, 960 F.2d at 1223); *see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 n.20 (3d Cir. 2018).

Here, the Court must distinctly assess whether it has specific personal jurisdiction over each Defendant, as well as whether the filings before the Court suggest with "reasonable particularity" the possible existence of minimum contacts with Pennsylvania, thus warranting jurisdictional discovery. The Court first addresses these questions as to Young and then turns its attention to Consumer Guardian.

## C. Defendant Sarah Young

Young argues that Hardwick has failed to establish this Court's personal jurisdiction over her because none of the alleged facts show "that the controversy arose from [Young's] activities within the forum state" or that the alleged activities satisfy the purposeful availment prong of the minimum contacts test.[5] (ECF No. 43, at 15; No. 48, at 10.) Young points out that she is a resident

---

[5] In their Reply (ECF No. 48), Defendants argue that neither Defendant satisfies the "effects" test as laid out in *Calder v. Jones*, 465 U.S. 783, 789 (1984), "in which the Supreme Court found personal jurisdiction to be proper over nonresident defendants that committed an intentional tort outside the forum." *IMO Indus., Inc. v. Keikert AG*, 155

8

of Florida and is not a party to the contract between Hardwick and Consumer Guardian. (*Id*. at 17–18.) As a result, Young contends that she "could not reasonably expect under standards of fair play and justice . . . to be haled before a Tribunal in the Western District of Pennsylvania." (*Id*. at 17.) Finally, Young argues that the "fiduciary shield doctrine prohibits this court form exercising personal jurisdiction over [Young] based solely on [Young's] job-related contacts." (ECF No. 48, at 12 (citing *Rice v. Nova Biomedical Corp*., 38 F.3d 909, 912 (7th Cir. 1994); *Evergreen Media Holdings, LLC v. Safran Co*., 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014)).)

In opposition, Hardwick argues that because Young is responsible for the "management" of Consumer Guardian's actions that lead to this dispute, "she can properly be expected to answer here as the actions of [Consumer Guardian, and that] coupled with Pennsylvania's participation theory make jurisdiction [over Young] proper." (ECF No. 47, at 12.) Hardwick also requests "limited jurisdictional discovery" to "more fully establish [Young's] conduct directed towards the forum state." (*Id*.)

---

F.3d 254, 256 (3d Cir. 1998) (discussing *Calder*'s holding). In *IMO Industries, Inc.*, the Third Circuit held that for the *Calder* "effects" test to apply, the "defendant must have committed an intentional tort." 155 F.3d 254, 256 (3d Cir. 1998). Based on this Court's survey of applicable law, CROA violations like the claims here do not constitute intentional torts because the CROA is a strict liability statute not requiring intentionally culpable conduct. *See McDaniel v. Credit Sols. of Am., Inc.*, No. 08-00928, 2012 WL 13102240, at *8 (N.D. Tex. Mar. 21, 2012) (citing *Hillis v. Equifax Consumer Serv., Inc.*, 237 F.R.D. 491, 502 (N.D. Ga. 2002)) ("If an entity's representations and actions fall under the purview of the CROA . . . , it is strictly liable for statutory violations regardless whether an individual relied on, was exposed to, or was harmed by its representations or actions."); *Helms v. ConsumerInfo.com, Inc.,* 236 F.R.D. 561, 569 (N.D. Ala. 2005) (holding that the CROA is a strict liability statute). But even if the CROA were not a strict liability statute, the Court's conclusion would remain the same. As the Court explains above, the alleged contacts presented in the Amended Complaint and other filings before the Court do not establish that either Young or Consumer Guardian (1) purposefully availed itself of the privileges and laws of the forum state under the *Walden v. Fiore* minimum contacts test; or that either Young or Consumer Guardian's conduct (2) connect them to the forum in a meaningful way. *LCV Capital Mgmt., LLC v. Nuova Argo Finanziaria S.p.A. et al.*, No. 18-01645, 2021 WL 716728, at *9 (W.D. Pa. Feb. 24, 2021) ("The Supreme Court in *Walden* further refined the *Calder* 'effects' test, concluding that '[t]he proper question [of the 'effects' test] is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum in a meaningful way*.'" (quoting *Walden v. Fiore*, 571 U.S. 277 (2014) (emphasis added))).

1. **<u>Minimum Contacts: Sarah Young</u>**

"Each defendant's contacts with the forum State must be assessed individually," and "jurisdiction over an employee [or an officer of an organization] does not automatically follow from jurisdiction over the corporation [or entity] which employs [them.]" *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Rush v. Savchuck*, 205 U.S. 364, 391 (1980)); *see Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997) (quoting *Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc.,* 785 F. Supp. 1186, 1191 (M.D. Pa. 1992)). As a result, the Court must determine (1) whether Young, outside her official capacity at Consumer Guardian, has sufficient minimum contacts with Pennsylvania in her personal capacity. Second, because Hardwick argues that personal jurisdiction is proper over Young via a participation theory and due to her status as a managing principal, operator, or controller of Consumer Guardian, the Court must also assess (2) whether any of Young's acts in her official capacity as the alleged "managing principal" of Consumer Guardian create sufficient contacts with Pennsylvania that would subject her to this Court's jurisdiction.

    a. **<u>Young's Personal-Capacity Contacts with Pennsylvania</u>**

Hardwick does not allege contacts that substantially connect Young in her personal capacity to Pennsylvania. Outside her official role at Consumer Guardian, there is nothing alleged within the Amended Complaint—nor is anything noted in the various exhibits filed—that connects Young to Pennsylvania. The only relevant contacts that the Court could discern from the record is that Young is the "managing principal, operator, and controller" of Consumer Guardian and that such a role creates personal jurisdiction over her. (ECF No. 34, at 4.)

Under *Walden*, the necessary inquiry into the existence of minimum contacts for specific jurisdiction purposes is whether the alleged contacts sufficiently establish the *defendant's*

relationship with the forum state rather than focusing on the *plaintiff's* relationship with the forum state. *See Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for [the court's] jurisdiction[.]"). The record reflects that Hardwick, as a resident of Pennsylvania, is "the only link between [Young] and the forum," which *Walden* rejects as the basis for a court's exercise of specific jurisdiction over an out-of-state defendant. *See Walden*, 571 U.S. at 285–86. Young is a Florida resident and is not party to the contract giving rise to the alleged CROA claims here. The Court also notes that, in any event, a contract would be insufficient grounds for the exercise of personal jurisdiction over her. *See Burger King Corp.*, 471 U.S. at 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)).

Hardwick essentially argues that because she resides in Pittsburgh and thus felt the effects of the alleged CROA violations in the forum, it can be said that Young purposefully availed herself of the benefits and privileges of the forum. If Hardwick relies on this argument as support for this Court's exercise of specific personal jurisdiction over Young, this argument will not carry the day because it runs contrary to the principles set forth in *Walden*. *See LCV Capital Mgmt., LLC*, 2021 WL 716728, at *11–13 (discussing the minimum contacts test under *Walden* and rejecting a similar argument). Rather, the record reflects that Young does not "(1) personally own property or real estate [in Pennsylvania]; (2) personally maintain bank accounts [in Pennsylvania]; [or] (3) transact business in a personal capacity [in Pennsylvania]," which cuts against of a finding of specific or general jurisdiction. *Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191. Thus, Young's only contacts

"with this forum result from the" the alleged fact that she is the manager, operator, or controller of Consumer Guardian, job-related contacts that the Court examines next. *Id.*

### b. Young's LLC-Official-Capacity Contacts with Pennsylvania

Hardwick argues that by way of Young's role as the managing principal, operator, or controller of Consumer Guardian, personal jurisdiction can be exercised over Young under the participation theory. (ECF No.47, at 12.)

According to several other district courts, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts." *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997) (alteration and quotation marks omitted) (quoting *Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191). District courts within our Circuit that have analyzed the "fiduciary shield" doctrine have recognized exceptions to this rule and held that "a corporate agent may be held personally liable for torts committed in their corporate capacity," *see McMullen v. European Adoption Consultants, Inc.,* 129 F. Supp. 2d 805, 811 (W.D. Pa. 2001) (collecting cases), or for violating "a statutory scheme that provides for personal, as well as a corporate, liability for corporate actions." *United Prods. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 562 (E.D. Pa. 2000) (citing *Nat'l Precast Crypt Co.,* 785 F. Supp. at 1191). The Third Circuit has not directly addressed the fiduciary shield's applicability to issues of personal jurisdiction over corporate officials, although it has held that officers of a fictional entity can be held personally liable under statutory schemes. *See Square D. Co. v. Scott Elec. Co.*, No. 06-00459, 2008 WL 4877990, at *2 (W.D. Pa. Nov. 12, 2008) (discussing *Elec. Lab. Supply Co. v. Cullen,* 977 F.2d 798, 807 (3d Cir. 1992), which held that "[a] corporate officer who actually and substantially participates in the corporation's act of trademark infringement is

personally liable under [the Lanham Act] even though he acted as an agent of the corporation rather than on his own behalf").

In assessing Defendants' fiduciary shield argument, this Court has the benefit of persuasive guidance from other district courts. In *McMullen v. European Adoption Consultants, Inc.*, the court synthesized a test other district courts have used in assessing personal jurisdiction based on corporate contacts or the like, and whether those contacts can create the basis for personal jurisdiction over individuals who serve in an official corporate capacity role. As a result, this Court finds the test summarized in *McMullen* to be a persuasive analytical tool, and one that the Court implements here: "Using a case-by-case approach to determine whether corporate contacts should be considered for personal jurisdiction over an officer, courts analyze the following factors: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the nature and extent of the officer's participation in the alleged tortious conduct [or statutory violation.]" *McMullen*, 129 F. Supp. 2d at 811; *United Prods. Corp.*, 122 F. Supp. 2d at 562.

Young is critical to the LLC's structure as the alleged managing principal, operator, and controller of Consumer Guardian—an alleged fact that the Court must presume as true, and which is facially accurate according to Defendants' Exhibit at ECF No. 43-3, Consumer Guardian's annual LLC report. Second, as to the nature and quality of Young's contacts with Pennsylvania, there facially appear to be none. She is not party to the contract between Consumer Guardian and Hardwick, nor did she sign any contract between Consumer Guardian and Hardwick in her official capacity. (*See* ECF No. 34-2.) And again, the Court notes that, in any event, a contract alone would be insufficient to establish personal jurisdiction. *Burger King Corp.*, 471 U.S. at 478. Finally, as for the third prong, even if Young could be liable under the CROA under a participation theory as Hardwick argues, such potential liability is not sufficient to subject her to personal jurisdiction in

13

Pennsylvania, especially where there are no contacts between her and Pennsylvania. *United Prods. Corp.*, 122 F. Supp. 2d at 562 (citing *Andrews v. Compusa, Inc.*, No. 99-03420, 2000 WL 623234, *2 (E.D. Pa. May 15, 2000); *Sneberger v. BTI Americas, Inc.,* No. 98–00932, 1998 WL 826992, at *4 (E.D. Pa. Nov. 30, 1998); *Schommer v. Eldridge,* No. 92–30372, 1992 WL 357557, at *2 (E.D. Pa. Nov. 30, 1992)). Thus, this third prong does not support establishing jurisdiction over Young based on her official capacity or status with Consumer Guardian. In short, the combination of her status with Consumer Guardian and the potential that she could have statutory liability is in the Court's judgment insufficient to empower a Pennsylvania court to exercise its power over her and assess personal liability against her in the absence of any contact between her and the forum that would demonstrate her purposeful availment of the privileges of the forum state.

For these reasons, the Court determines that Young's contacts in her official capacity as a managing principal or operator of Consumer Guardian do not establish personal jurisdiction over Young. Thus, the Court concludes that it lacks the power to hear claims against Young via specific personal jurisdiction. As the Court explains below, these circumstances also do not warrant limited jurisdictional discovery as to her.

### 2. Jurisdictional Discovery as to Young

"[W]here the defendant is an individual, the presumption in favor of [jurisdictional] discovery is reduced." *Mass. Sch. of Law at Andover v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). In the Amended Complaint, Hardwick presents no factual allegations that suggest with "reasonable particularity" the possible existence of contacts between Young and Pennsylvania, in either her personal capacity or Consumer Guardian official capacity. The Amended Complaint alleges only that Young is the managing principal and controller of Consumer Guardian. Otherwise, it is apparent from the face of the Amended Complaint that Young is not part of the

contract between Hardwick and Consumer Guardian, and that she is a resident of Florida with no connection to Pennsylvania.

Thus, all claims raised against Young in the Amended Complaint are dismissed without prejudice for lack of personal jurisdiction. To the extent that Hardwick requests limited jurisdictional discovery as to Young, the request is denied because the facts alleged in Hardwick's Amended Complaint do not "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [Young] and the forum state." *Toys "R" Us, Inc.,* 318 F.3d at 456.

### D. Defendant Consumer Guardian

Like Young, Consumer Guardian argues that Hardwick has failed to meet her burden to establish this Court's jurisdiction over the LLC. Consumer Guardian first notes that the contract between Hardwick and Consumer Guardian "contemplates that 'This agreement shall be construed and consummated in State of Florida'" and also includes a forum-selection clause choosing Orange County, Florida as the forum for disputes arising out of the contract. (ECF No. 43, at 17 (citing ECF No. 34-2).) Second, Consumer Guardian argues that because its principal place of business and place of incorporation is Florida, haling Consumer Guardian to court in the Western District of Pennsylvania offends "standards of fair play and justice." (*Id*.) In turn, Hardwick argues that Consumer Guardian "purposefully directed activities at the forum as they entered into an unlawful arrangement with" Hardwick and withdrew money from Hardwick's bank account in the Western District of Pennsylvania. (ECF No. 47, at 11.) Hardwick also asserts that Consumer Guardian "undertook actions that would impact [Hardwick's] credit score and corresponding score, which is central to Hardwick, and therefore affected [her in this forum]." (*Id*.)

### 1. <u>**Minimum Contacts: Consumer Guardian**</u>

Based on the Amended Complaint and other material filings, the Court summarizes the relevant contacts Hardwick alleges as substantially connecting Consumer Guardian to Pennsylvania: (1) a contract consummated in Florida and subject to a Florida forum-selection and choice of law clause signed by Hardwick (ECF No. 34, at 4); (2) Consumer Guardian's passively interactive website that advertises their credit repair services (*id.*); and (3) and a series of "debt validation requests" faxed by Hardwick through Chad Jones,[6] a representative of Consumer Guardian to three debt collectors, all of which are located outside Pennsylvania. (*Id.* at 6.) The Court concludes that these contacts do not satisfy the minimum contacts test set forth in *Walden*.

Each alleged contact is based on the effect Hardwick felt in the forum. Thus, the minimum contacts as alleged in Hardwick's Amended Complaint and other filings the Court may properly consider are insufficient for this Court to exercise specific personal jurisdiction because the alleged contacts center on Hardwick's relationship with the forum state, rather than Consumer Guardian's relationship with the forum. *See Walden*, 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for [the court's] jurisdiction[.]"); *see also LCV Capital Mgmt.*, 2021 WL 716728, at *11–*13.

While the contract at issue connects Consumer Guardian to Hardwick, who resides in Pennsylvania, Hardwick's jurisdictional allegations based on the contract fail to connect Consumer Guardian "*to the forum* in a meaningful way," and the alleged contacts do not suggest that

---

[6] The record does not establish where Chad Jones was located, although the Court notes that the three debt validation letters requested that any written responses be sent to the following address: "C/O: Secretarial Service; P.O. Box 339 Delta, PA 17314." (ECF Nos. 34-5, 34-6, and 34-7.) The Court further observes that this mailing address is the same address that Consumer Guardian lists in its Florida LLC Annual Report. (ECF No. 43-3.)

Consumer Guardian is benefitting from the privileges or laws of Pennsylvania. *Walden*, 571 U.S. at 290 (emphasis added); *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)). Moreover, a Consumer Guardian representative sent the debt-validation communications, allegedly as part of the services Consumer Guardian was to perform under the contract, to entities outside the forum, and thus these letters, on the record at present, do not themselves constitute a contact connecting Consumer Guardian to Pennsylvania in a meaningful way. *Walden*, 571 U.S. at 290.

As for the alleged contact based on Consumer Guardian's website, courts have at times held that where an entity advertises and sells goods or products over an interactive website targeting a specific geographic region, the website itself permits the court to exercise specific jurisdiction. In the seminal case of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), this Court analyzed whether it could exercise specific personal jurisdiction based on the operation of a website. The court held that "[i]n cases where the defendant is clearly doing business through its web site in the forum state, and where the claim relates to or arises out of the use of the web site . . . personal jurisdiction exists." *Toys "R" Us, Inc.*, 318 F.3d at 452 (discussing *Zippo*, 952 F. Supp. at 1124). The Third Circuit has also made plain that where a website does not accept payment or engage in business transactions, but serves purely as an informational platform (*i.e.*, permitting customers to enter personal information to access more information), that internet contact cannot create jurisdiction over the defendant. *See Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 212 (3d Cir. 2014).

17

Consumer Guardian's website is purely informational, permitting customers interested in the credit repair organization's services to enter contact information if a prospective customer wants to learn more. (*See* ECF No. 34-3.) Moreover, the fact that Hardwick is from Pennsylvania and accessed the website while in Pennsylvania does not create jurisdiction over Consumer Guardian. *Walden*, 571 U.S. at 285–86. ("[T]he plaintiff cannot be the only link between the defendant and the forum."). In sum, based on the contacts as alleged in the Amended Complaint and the relevant filings proffered as part of Defendants' jurisdictional challenge, there are insufficient contacts for this Court to conclude that Consumer Guardian has substantial connections with Pennsylvania such that the LLC purposefully availed itself of the forum's laws and privileges.

That said, there is one filing in the record before the Court that creates "the possibility" of a connection between Consumer Guardian and Pennsylvania, such that jurisdictional discovery to examine Consumer Guardian's contacts with Pennsylvania is warranted. And that is explained below.

**2. Jurisdictional Discovery as to Consumer Guardian**

In Hardwick's Opposition to the Motion to Dismiss, she points out that "[c]ontained within Exhibit 'A' of Defendants' motion is a 'Florida Limited Liability Company Annual Report' which delineates the 'Current Mailing Address' of [Consumer Guardian] as 'Box 399 Delta PA 17314.'" (ECF No. 47, at 12. (referring to ECF No. 43-3).) On this basis, Hardwick requests limited jurisdictional discovery to determine whether Consumer Guardian has "established operations in Pennsylvania . . . [and] undertaken actions directed at both Pennsylvania and this forum" that would support jurisdiction over Consumer Guardian. (*Id.*) As an Exhibit to the joint Motion to Dismiss reveals, Defendants did indeed file a report titled "2020 Florida Limited Liability Company Annual Report" at ECF No. 43-3. The Report lists Consumer Guardian Specialist LLC's current principal

place of business as Lutz, Florida, but it also lists the LLC's current mailing address as "Box 339, Delta, PA 17314." (*Id.*) Moreover, the Court observes that in each debt validation request letter that Consumer Guardian allegedly faxed on behalf of Hardwick, the mailing address to which written responses were requested to be sent matches the Pennsylvania post office box mailing address listed in Consumer Guardian's LLC annual report. (*Compare* ECF Nos. 34-5, 34-6, and 34-7, *with* ECF No. 43-3.) The issue is whether this exhibit and the matching mailing address listed in each of the three debt validation letters present factual allegations that suggest with "reasonable particularity" the possible existence of contacts between Consumer Guardian and Pennsylvania.

When a defendant is a corporation or some other fictional business entity, like an LLC such as Consumer Guardian, the Third Circuit looks favorably upon limited discovery as to personal jurisdiction. *Metcalf*, 566 F.3d at 336. Thus, the Court concludes that Consumer Guardian's representation in an official LLC annual report that its current mailing address is in Pennsylvania, in addition to the matching address listed in the debt validation letters, suggests with "reasonable particularity" the possible existence of contacts between Consumer Guardian and Pennsylvania. The Court will therefore permit the parties to engage in limited jurisdictional discovery for a period of sixty (60) days from the date of this Opinion. Discovery is limited to matters proving or negating Consumer Guardian's jurisdictional contacts with Pennsylvania and whether those contacts might support either specific personal jurisdiction or general personal jurisdiction.[7]

---

[7] While Hardwick argues that specific personal jurisdiction is the basis for the Court's exercise of jurisdiction over Consumer Guardian in her briefing (ECF No. 47), the Court does not foreclose Hardwick from arguing that the Court has general personal jurisdiction in the alternative should the authorized limited jurisdictional discovery reveal the (unlikely) reality that Consumer Guardian has such continuous and systematic contacts with, or a presence in, Pennsylvania such that it is "at home" here. *Ford*, slip op. at 5.

IV. **CONCLUSION**

For all the reasons set forth in this Opinion, the Court grants in part Defendants' Motion to Dismiss to the extent it seeks dismissal of Hardwick's claims against Sarah Young for want of jurisdiction. Thus, the Court dismisses Hardwick's claims against Sarah Young without prejudice for want of personal jurisdiction. As for the claims brought against Consumer Guardian, the Court, on the record at present, holds in abeyance its decision to grant Defendants' Motion to Dismiss as to Consumer Guardian pending completion of limited jurisdictional discovery regarding Consumer Guardian's jurisdictional contacts with Pennsylvania. The parties will have sixty (60) days from the date of the issuance of this Opinion to complete limited jurisdictional discovery regarding Consumer Guardian's contacts with Pennsylvania.

This action will be stayed and administratively closed during that period of limited jurisdictional discovery and during the pendency of any renewal of the Motion to Dismiss as to Consumer Guardian. Further, the parties shall file a joint status report as to the conduct of such discovery thirty (30) days after the date of this Opinion.

 s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: March 26, 2021
cc: All counsel of record